## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| CHRISTOPHER DUNE ROBERTS, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 4:11-CV-2007 JAR |
| v. | ) ) ) | |
| STEVE R. DAVIS, et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the court on Defendants' Motion for Summary Judgment ("Motion"; ECF No. 24). The Court issued two show cause orders for Plaintiff Christopher Dune Roberts ("Plaintiff") to respond to Defendants' Motion. (ECF Nos. 31, 33). Plaintiff, however, has not responded to Defendants' Motion or the Court's Orders. Accordingly, the Court considers Defendants' Motion fully briefed and ready for disposition. See Cusamano v. Sobek, 604 F. Supp. 2d 416, 426 (N.D.N.Y. 2009)("where a nonmoving party fails to adequately respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute—even if that nonmoving party is proceeding *pro se*").

## BACKGROUND

In September 2011, Plaintiff was incarcerated in the Missouri Department of Corrections ("MDOC"), serving two concurrent five-year sentences. (Defendants' Statement of Uncontroverted Material Facts ("DSUMF"), ECF No. 25, ¶1). Plaintiff received a director's release on September 16, 2012. (Id., ¶2).

Officer Davis and Officer Lacy conducted their routine monthly cell searches in Housing Unit 2, C-wing on September 10, 2011. (Id., ¶3). Cell searches of Housing Unit 2, C-Wing began at 7:07 p.m. (Id., ¶4). As part of the wing cell search, Plaintiff's cell was searched by Officers Davis and Lacy. (Id., ¶5). Officers Davis and Lacy found contraband, consisting of trash, which they disposed of. (Id., ¶6). Officers Davis and Lacy were in Plaintiff's cell for thirty-seven (37) seconds. (Id., ¶7). The cell searches concluded at 8:35 p.m. (Id., ¶8). A nurse was present on the C-Wing in Housing Unit 2 from 8:32 through 8:54 to complete a med pass. (Id., ¶9). Plaintiff did not complain that Officer Davis used force against him during a cell search on September 10, 2011, from the time the cell searches concluded at 8:35 until the end of the shift at 11:30 p.m. (Id., ¶10). Plaintiff did not request treatment from the nurse on the wing after the alleged use of force during the second shift. (Id., ¶11). Plaintiff waited more than three hours until the beginning of the next shift (the third shift) to complain of his injuries. (Id., ¶12). The nurse recorded Plaintiff's injuries as a knot on the left upper front of the head, knot on the back of the head, open scratch on the inside of upper right arm, several closed scratches noted on both sides of lower back. (Id., ¶13).

If a use of force is required at the Potosi Correctional Center ("PCC"), a report is written and maintained by the Major's Office. (Id., ¶15). No use of force report was filed in relation to Plaintiff on September 9 or 10, 2011. (Id., ¶16). Officer Davis was moved out of Plaintiff's Housing Unit after Plaintiff complained of force. (Id., ¶17).

After the alleged use of force, an officer assigned to Plaintiff's housing unit stated that he overheard Plaintiff stating to other offenders in the wing on September 13, 2011, that "I set his ass up. They will pull his ass out of this Housing Until now. That's all you gotta do man." (Id., ¶18). Plaintiff apparently was referring to Officer Davis.

Another officer assigned to Plaintiff's Housing Unit found a communication between inmates stating that Plaintiff had contraband in his cell. (Id., ¶19). The note also stated, "Grasshopper … he's in Cell-29…didn't he lie on COI Davis? Kez said he faked he's [sic] injuries." (Id.). Plaintiff's nickname is Grasshopper. (Id., ¶21).

Offender Queen stated that Plaintiff told Queen that Plaintiff had set up Officer Davis and that Plaintiff had placed the marks on himself. (Id., ¶22).

Captain Marler began an initial investigation of Plaintiff's claims on September 12, 2011, with assistance from Officer Bollinger. (Id., ¶23). Capt. Marler and Officer Bollinger both indicated that Plaintiff's injuries could have been self-inflicted based upon the position of his injuries. (Id.).

Prior to September 10, 2011, Plaintiff had claimed officers used force on him on three occasions. (Id., ¶24). All of Plaintiff's allegations were investigated and found to be unsubstantiated. (Id.).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

## DISCUSSION

### I.     Statement of Facts

Under this Court's local rules, "[a] memorandum in support for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations." E.D. Mo. L.R. 4.01(E). In turn, "[t]he opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." (Id.).

Here, Plaintiff has not responded to Defendants' statement of facts (or Defendants' Motion). Consequently, the Court deems Defendants' facts as admitted. See Moore v. City of Desloge, 692 F. Supp. 2d 1122, 1128 (E.D. Mo. 2010) aff'd sub nom. Moore v. City of Desloge, Mo., 647 F.3d 841 (8th Cir. 2011); Fed.R.Civ.P. 56(e)(2).

## II.     Plaintiff's Claims Under 42 U.S.C. 1983

In his Complaint, Plaintiff purports to allege claims under 42 U.S.C. §1983. (ECF No. 1). Plaintiff contends that Defendants Officer Steve R. Davis and Officer Rick Lacy, employees of the Missouri Department of Corrections, violated Plaintiff's Eighth Amendment Rights. Specifically, Plaintiff alleges excessive use of force by Officer Davis and failure to protect by Officer Lacy, during a search of Plaintiff's prison cell.

### A. Excessive Force Claim against Officer Davis

"When confronted with a claim of excessive force alleging a violation of the Eighth Amendment, the core judicial inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Santiago v. Blair, 707 F.3d 984, 990 (8th Cir. 2013)(quoting Hudson v. McMillian, 503 U.S. 1, 6–7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). "'The Supreme Court recently clarified that the extent of any resulting injury, while material to the question of damages and informative as to the likely degree of force applied, is not in and of itself a threshold requirement for proving this type of Eighth Amendment claim.'" Santiago, 707 F.3d at 990 (quoting Williams v. Jackson, 600 F.3d 1007, 1012 (8th Cir.2010)).[1]

---

[1] Based upon this precedent, the Court does not address Defendants' argument that they are entitled to summary judgment because Plaintiff's injuries were *de minimis*. See Williams, 600 F.3d at 1012 (the Supreme Court has "expressly rejected the theory that lower courts may dismiss such claims based solely on the *de minimis* nature of the resulting injury").

Plaintiff's Complaint alleges that Officer Davis used excessive force during the September 10, 2011 search of his cell. Defendants contend that Plaintiff's claim of excessive use of force fails because the evidence demonstrates that Defendants applied no force on Plaintiff, much less maliciously and sadistically and for the purpose of causing harm. (Memorandum in Support of Defendants' Motion for Summary Judgment ("Memorandum"), ECF No. 25, p. 3). The evidence before the Court does not support a finding of excessive use of force.

First, eye witness accounts indicate that that cell search was conducted without the use of force. Sergeant Brown was a witness to the cell search. Sgt. Brown stated that Plaintiff was placed on a security bench during the search, was escorted back to his cell, and the restraints were removed without incident. (ECF No. 26, Ex. H, pp. 5, 28). Likewise, Officer Donald Hale was on the C Wing of Housing Unit 2 and conducted security checks after the alleged use of force. Officer Hale said that he conducted numerous checks that night but Plaintiff never indicated that he was injured or asked for medical attention. (ECF No. 26, Ex. H, p. 5). Officer Hale also did a medication pass for Plaintiff with nurse Barbara Ross, whereby Plaintiff received medication at the door of his cell. ECF No. 26, Ex. H, p. 5, 22, 27). Officer Hale stated that Plaintiff had no injuries when he was standing at the cell door that evening, but that he had marks on his body the following morning. (ECF No. 26, Ex. H, pp. 5, 22, 27). Finally, Officer Andrew Cain conducted security checks in the C Wing of Housing Unit 2 the evening of the alleged attack, but Officer Cain never saw any marks on Plaintiff. (ECF No. 26, Ex. H, p. 36). Officer Cain stated that Plaintiff never tried to self-declare a medical request during his shift. (Id.).

Defendants also point out that no report of use of force was made regarding the alleged incident. A report must be prepared any time force is utilized at PCC. See ECF No. 25-6, Ex. F.

No report was made regarding the purported use of force against Plaintiff on September 9 or 10, 2011. (Id.).

Defendants further cast doubt on Plaintiff's claim because Plaintiff delayed in reporting the alleged incident. Plaintiff waited more than three hours—until the next shift—to report his injuries to Officer Tackett. (Memorandum, p. 6).

In addition, Defendants note that several people that observed Plaintiff's injuries believe that his injuries could have been self-inflicted. (Memorandum, p. 6). Officer Tackett observed that "the offender had marks on him but appeared to me to be self-inflicted." (Id.). Similarly, Sergeant Scroggins indicated that some of Plaintiff's injuries looked self-inflicted, and none looked like Plaintiff had been assaulted because Plaintiff had no bruising. (Id.). Moreover, Officer Bollinger, who photographed Plaintiff's injuries, stated that "[w]ith the location of the scratches, Offender Roberts could have done it." (Memorandum, p. 7). Finally, Captain Marler, who conducted the initial investigation into Plaintiff's injuries, suggested that Plaintiff's injuries were self-inflicted. (Id.).

As further support of their Motion, Defendants detail other information that supports a finding that Plaintiff's injuries were self-inflicted. (Memorandum, p. 8). Officer Buckner stated that he overheard Plaintiff telling other offenders on September 13, 2011 that "I set his ass up. They will pull his ass out of this Housing Unit now. That's all you gotta do man." (Id.). Similarly, Officer Leach found a note in Housing Unit 2. (Id.). The note appeared to be a communication between two inmates that stated, "Grass hopper … he's in Cell-29…didn't he lie on COI Davis? Kez said he faked he's [sic] injuries." (Id.).[2] Plaintiff stated in his deposition

---

[2] However, the offenders named in the notes denied knowing anything about the incident and one refused to be interviewed. (Memorandum, p. 8).

that his nickname is Grasshopper.  (Id.).  In addition, after the incident, Plaintiff moved into a different cell and his new cell with a roommate named Queen.  Offender Queen told an investigator that Plaintiff told Queen that Plaintiff had set up Officer Davis.  (Id.).  Plaintiff reportedly told Queen that Plaintiff had placed marks on himself and that he had set up Officer Davis so that he would be removed from Housing Unit 2.  (Id., pp. 8-9).

Thus, the Court finds the evidence does not support a finding that Officer Davis used force on Plaintiff or that Officer Davis' purported use of force was the cause of any of Plaintiff's injuries. The evidence supports only a finding that Plaintiff's injuries were self-inflicted, and not the result of any force used by Officer Davis.  See Brown v. Raimondo, 9:06CV0773GTS/RFT, 2009 WL 799970, at *6 (N.D.N.Y. Mar. 25, 2009) aff'd, 373 F. App'x 93 (2d Cir. 2010)(granting summary judgment to Defendants and dismissing Plaintiff's Eighth and Fourteenth Amendment claims because Plaintiff's injuries "may have been self-inflicted" and because any force was not administered with malicious intent); Goff v. Garcia, CIV.A. H-10-2487, 2011 WL 1831681, at *5 (S.D. Tex. May 12, 2011)(granting summary judgment to Defendant on Plaintiff's Eighth Amendment claims because the injuries were either self-inflicted or occurred outside of the jail). Accordingly, the Court grants Defendants' Motion for Summary Judgment on Plaintiff's §1983 claim for excessive use of force.

B.  Failure to Protect against Officer Lacy

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994).  To state a failure-to-protect claim, Plaintiff was required to allege that (1) defendants were aware of facts from which they could infer the existence of a substantial risk of serious harm to him, (2) they

actually drew the inference, and (3) they failed to take reasonable steps to protect him. Schofield v. Hopkins, 491 F. App'x 772, 774 (8th Cir. 2012)(citing Farmer, 511 U.S. at 836–38, 844).

Here, Plaintiff fails to demonstrate that he suffered any harm as a result of Officer Davis. The evidence indicates that Plaintiff experienced a standard cell search, which lasted only 37 seconds. As previously discussed, several eyewitnesses reported that Defendants never used force on Plaintiff. Likewise, Plaintiff did not complain of an excessive use of force until several hours later. Several officers reported that Plaintiff's injuries appeared to be self-inflicted. And, there was evidence that Plaintiff faked his injuries in order to set up Officer Davis. (Memorandum, p. 11).

Consequently, the evidence also does not support a finding that Officer Lacy failed to protect Plaintiff during Officer Davis' alleged assault of Plaintiff. Plaintiff's failure to protect claim cannot lie because there is no evidence of an underlying unconstitutional use of force against Plaintiff. Reed v. Harrison Cnty., Mississippi, CIVA 1:07CV704-RHW, 2009 WL 235354, at *4 (S.D. Miss. Jan. 30, 2009)(granting summary judgment in favor of defendants and dismissing plaintiff's failure to protect claim where he suffered no injury). The Court grants Defendants' Motion for Summary Judgment on Plaintiff's §1983 claim for failure to protect.

### C.  Qualified Immunity

Qualified immunity shields law enforcement officers from suit if they "[did] not violate [a] clearly established statutory or constitutional right[ ] of which a reasonable person would have known." Gorra v. Hanson, 880 F.2d 95, 97 (8th Cir. 1989)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982))). Determining the question of qualified immunity involves the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of

the defendant's alleged misconduct.  <u>Santiago</u>, 707 F.3d at 989 (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). If no reasonable factfinder could answer yes to both of these questions, the officer is entitled to qualified immunity. <u>Nance v. Sammis</u>, 586 F.3d 604, 609 (8th Cir. 2009).

As discussed at length previously, the record is devoid of any evidence that Officers Davis and Lacy violated Plaintiff's constitutional rights.  Rather, the undisputed facts demonstrate that Plaintiff's injuries were self-inflicted and not the result of any excessive use of force or failure to protect.  Thus, as another basis, the Court finds that Defendants are entitled to qualified immunity and grants summary judgment in their favor.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [24] is **GRANTED**.

Dated this 6th day of May, 2013.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**